STATE of Missouri, Respondent,

v.

Willie B. TALLIE, Appellant.

No. 50302.

Supreme Court of Missouri,

Division No. 1.

July 13, 1964.

Thomas F. Eagleton, Atty. Gen., Louis C. DeFeo, Jr., Asst. Atty. Gen., Jefferson City, for respondent.

Taken as submitted by appellant.

HIGGINS, Commissioner.

Willie B. Tallie was found guilty by a jury of burglary, second degree. Section 560.045, RSMo 1959, V.A.M.S. After finding that defendant had previously been convicted and sentenced for five felonies in accordance with Section 556.280, RSMo 1959, V.A.M.S., and as alleged in the amended

information, punishment was fixed by the trial judge at imprisonment in the penitentiary for a term of six years. Section 560.095, RSMo 1959, V.A.M.S. Sentence and judgment followed and defendant has appealed.

■ The state has filed a brief but appellant has not. In this situation the Supreme Court will review assignments of error properly preserved in the motion for new trial. State v. Parks, Mo., 331 S.W.2d 547, 549[1].

On January 11, 1963, at about 6:30 p. m., Virgil Bennett and his wife, Ruth, left their home at 6228 Lenox, Wellston, Missouri. Before leaving, Mr. Bennett checked to see if all windows and doors were locked. He returned alone about 7:00 p. m., at which time he discovered the key to his bank lockbox in an ash tray in the kitchen. He put the key in the top drawer of the dresser in the bedroom. The key was usually in the second drawer of the dresser and it had not been in the ash tray when he left at 6:30 p. m.

Mr. Bennett left again between 7:30 p. m. and 8:00 p. m. and returned with his wife at 9:00 p. m. Mrs. Bennett then discovered the dresser drawer "all tore topsy turvy" and that her jewelry box and jewelry were missing. She also discovered the front window open about one and one-half inches and its screen gone. The screen was found lying against a neighbor's house and had been pierced near the hook. The window sash had been chipped and there was a hole in it beneath the lock area. Leaves had been tracked into the house.

The police were called about 9:45 p. m. and they arrived about five minutes later. The Bennetts went with the police to the station and identified their missing articles, which became Exhibit 6 in evidence. Mrs. Bennett specifically identified a silver spoon and jet beads from the exhibit.

On the same evening, Officer Donald McBride of the Wellston police was riding in the area of 6300 Ridge in Wellston with Officer George Dawes. While on Cockrill Avenue he observed a colored subject walking along the Hodiamont car tracks in front of the car. The subject was 5'8"–5'9" and 180–190 pounds, of stocky build, and dressed in a topcoat and light tan or khaki pants. McBride got out to check him and lost him in a nearby gangway. He went back to the car and after riding a short distance, saw the man again. He again got out and ordered the man to stop. The man "took off" running. He chased him and saw him later coming from the area of a dead-end gangway without a coat. He and Officer Dawes arrested and handcuffed the man (defendant). Officer McBride went back into the gangway and found the topcoat which contained a paper bag containing the jewelry ultimately identified as Exhibit 6. The defendant told the officers that he took the jewelry from a house but he did not remember which one and that he had gone in the back door. Defendant was taken to the police station and shortly thereafter the Bennett burglary was reported.

Just prior to the foregoing events Officer George Dawes received a call to look for a man flourishing a shotgun. The man was described as colored, 175–180 pounds, 5'8" or 5'9" tall, wearing a dark coat and tan or khaki pants. After picking up Officer McBride he saw a colored man that he felt was "pretty well the description of the man" about whom the call had been received. The man that Officer McBride later took into custody was the same man seen earlier by Officer Dawes. This man was the defendant and when questioned about a shotgun, he admitted having one earlier which he hid under a porch, as well as to admit getting the jewelry out of a house in the area. The gun was found under a porch where the defendant said he had hidden it.

■ Appellant's assignment 5 is that the court erred in overruling defendant's motion for a judgment of acquittal at the close of all the testimony. In determining the sufficiency of the evidence on a motion for judgment of acquittal, the court must con-

sider as true the evidence favorable to the state, together with favorable inferences that can reasonably be drawn therefrom, and must disregard evidence and inferences to the contrary. State v. Sykes, Mo., 372 S.W.2d 24, 26[3]; State v. Davis, Mo., 367 S.W.2d 517, 519[2, 3].

■■ Briefly stated, the elements of the offense of burglary in the second degree are the breaking and entering of a dwelling house by a person with intent to commit a felony or to steal therein. Section 560.045, RSMo 1959, V.A.M.S. We believe these elements were shown by the facts recited above. There was evidence to the effect that the Bennetts left their home with doors and windows locked and that upon their return the front window was open and the screen gone; that the screen had been pierced near its hook; that the window had been chipped and there was a hole beneath the lock; that the bedroom was in disarray and leaves had been tracked into the house; that Mrs. Bennett found items of jewelry missing from her dresser. This evidence would support a finding of breaking into a dwelling house and a stealing therein.

In addition, there was evidence to the effect that defendant was apprehended in the vicinity of the Bennett home; that he ran from the officers; that he abandoned the jewelry and his topcoat and later admitted taking the jewelry in a burglary in the area, which jewelry was identified as Exhibit 6. This evidence would support a finding connecting appellant to the burglary.

There is substantial evidence to support the verdict of burglary in the second degree, and the trial court did not err in overruling defendant's motion for a judgment of acquittal.

■ Appellant was charged in addition to burglary in the second degree with five prior convictions within the meaning of Missouri's second offense act, Section 556.280, RSMo 1959, V.A.M.S. In support of such charges the state offered the records of the St. Louis County Circuit Court. Appellant

contends by his assignment 1 that the court erred in admitting those records as proof of prior convictions for the reason that no proper foundation was laid for their introduction. Receipt of Exhibits 1, 2, and 3 in evidence is thus questioned. The transcript shows them to be files of the criminal division, St. Louis County Circuit Court. Each exhibit was identified by Edwin Delaney, a deputy clerk of that division, a witness qualified to make such identification. State v. Donnell, Mo., 351 S.W.2d 775, 780[8]. Exhibit 1 showed that on October 25, 1955, in Cause No. 199619, appellant pleaded guilty and was sentenced to two years' imprisonment for burglary, second degree. Exhibit 2 showed that on August 8, 1957, in Cause No. 217949, appellant pleaded guilty and was sentenced to four years' imprisonment for burglary, second degree, and that he pleaded guilty and was sentenced to four years' imprisonment for stealing. Exhibit 3 showed that on August 8, 1957, in Cause No. 217629, appellant pleaded guilty to charges of burglary and stealing and that he was sentenced to four years' imprisonment for each offense to run concurrently with the sentences shown by Exhibit 2. These records were attested and sealed by the Clerk of the Circuit Court and are thus properly received as evidence of the acts or proceedings of such court in any court of this state. Section 490.130, RSMo 1959, V.A.M.S. Furthermore, these records are records of the trial court, i. e., the Circuit Court of St. Louis County. We have held that a court can take judicial notice of its own records and files. Arata v. Monsanto Chemical Co., Mo., 351 S.W.2d 717, 721[5]. For these reasons, we hold the records of the St. Louis County Circuit Court were properly admitted in evidence.

■ By assignment 2 appellant contends that proper foundation was not laid for admission of records of the Missouri State Penitentiary, Exhibits 4 and 5. From the transcript it can be determined that each of these was a Certified Transcript of Serial Record, and each showed appellant to have been received at the penitentiary and that he

served the sentences imposed by Exhibits 1, 2, and 3. These exhibits were also offered on the question of previous convictions and such certified records have been repeatedly held admissible in evidence on such issue. State v. Burns, Mo., 328 S.W.2d 711, 712 [1]. They were properly admitted by the trial court here.

■ Appellant contends by assignment 3 that the court erred in finding defendant guilty of previous felonies, since the evidence in support of said findings was not properly authenticated or certified and there had been no proper foundation laid for such findings. The trial court determined this issue outside the hearing of the jury as required by the statute. Section 556.280, RSMo 1959, V.A.M.S. We have previously held that Exhibits 1, 2, 3, 4, and 5 were properly received in evidence by the trial court. The trial court made a finding upon this evidence that appellant had been five times previously convicted. The evidence is substantial on this point and we rule this contention against appellant.

■ Appellant contends by assignment 4 that the court erred in overruling defendant's motion to suppress evidence charging that certain evidence was obtained by illegal search and seizure. It appears that there was no search in fact of defendant's person. The evidence shows that the victims' jewelry, Exhibit 6, was found in a coat in a dead-end passageway. When defendant was apprehended *he was not wearing the coat.* McBride found the coat about 60 or 70 feet away from the point of arrest. Defendant made no response to questions as to the ownership of the coat. Under this lack of claim of interest and control it can be said that any evidence so obtained was not the result of a search and seizure. Defendant cannot complain of a search of such coat and seizure of property therein under these circumstances. State v. Cantrell, Mo., 310 S.W.2d 866, 870[7,8]; State v. Harris, Mo., 325 S.W.2d 352, 355[2–4]. The trial court properly overruled defendant's motion to suppress.

■ Appellant complains by assignment 6 of the trial court's refusal of defendant's Instruction Delta B on circumstantial evidence. If there is direct evidence from which the jury could have found defendant's guilt, an instruction on circumstantial evidence need not be given. State v. Cox, Mo., 352 S.W.2d 665, 670[4]; State v. Burns, supra, 328 S.W.2d 713[4]. Immediately upon defendant's arrest his coat was found and it contained the victims' jewelry. This alone was direct evidence connecting defendant with the offense. Later he admitted to the officers that he got the jewelry from a house in the area. Testimony by way of admission by the defendant is direct evidence which excuses the need for an instruction on circumstantial evidence. State v. Criger, Mo., 46 S.W.2d 537, 539[3]. "Such an instruction is not mandatory under Sec. 4070, Mo. R.S.1939 (now Section 546.070, RSMo 1959, V.A.M.S. and Supreme Court Rule 26.02, V.A.M.R.) and Mo.R.S.A. where at least part of the state's evidence is direct." State v. Loston, Mo., 234 S.W.2d 535, 538[7]. There is direct evidence in this case and the trial court therefore committed no error in refusing to give defendant's proffered instruction on circumstantial evidence.

Appellant complains by assignment 7 that the trial court erred in overruling his objection to the statement of the prosecuting attorney "that the defense had raised 'smoke' in regard to the issue of this case, thereby prejudicing the Defendant in the eyes of the Jury." In assignment 8 appellant complains that the court erred in refusing to declare a mistrial alleging that the prosecuting attorney commented on defendant's failure to testify.

These points require that the language in question be quoted from the transcript and, for convenience, we will consider assignments 7 and 8 together. The closing argument proceeded along this line:

"MR. ANDERSON: Don't be mislead in this case. Remember the questions coming from Mr. Shaw. When that defendant

was first arrested he told you he found the jewelry on the streetcar tracks, didn't he? Willie found that jewelry. The police officer said, 'No, he didn't tell me that, he didn't say that he found the jewelry.'

"That didn't work with either officer. They didn't go for that. They said, 'No, Willie didn't say anything about finding the jewelry.'

"It switched a little then to the point where everybody has got this jewelry.

"He says that it is junk jewelry. I will agree, but I will agree that it was not Willie Tallie's fault that it was junk jewelry or not when he had it.

"But the evidence is mixed up. Everybody is switching evidence—or at least this is the indication that you might get from the questioning. Officer McBride and Officer Dawes said that the jewelry was taken from the coat from Willie and brought in the police department, and Mrs. Bennett in their presence says, 'That is my jewelry,' and Mrs. Bennett positively identified the jewelry here. There is a little smoke in this case but don't be mislead.

"MR. SHAW: I object. The only reference I made to the jewelry was the chain of custody. I didn't even cross-examine the woman. I think counsel is making an improper comment 'smoke.'

"THE COURT: The objection is overruled.

"(Thereupon Mr. Anderson continued his argument and the following objection was made:)

"MR. ANDERSON: Now, I see only one thing in the cause and that is the back door, and I submit that it is unreasonable and would be unfair to the State for you to throw this case out or find the defendant guilty or not guilty because out of his mouth he says, 'As I remember I went in the back door when that jewelry was taken.'

"MR. SHAW: I object. That is a direct misquote of the evidence as I remember it, the officers did not testify to this.

"THE COURT: Here again I am going to overrule the objection but the jury will rely on their own recollection of the evidence.

"MR. ANDERSON: That one point. Everything matches up and matches up perfectly. There is just one problem in this case and that is that he says he took the jewelry, entered the home, but he says, 'I went through the back door.'

"Now, if that is enough to create a substantial, reasonable doubt in your minds then I say acquit him, the defendant, but don't forget you have a duty to the State just as much as you have a duty to this defendant, you have a duty as jurors and citizens of this county, and looking at these facts *these facts are uncontradicted* with one exception coming from his mouth that he came through the back door.

"MR. SHAW: Just a moment. Will you come up?

"(Thereupon the following was had out of the hearing of the jury:)

"MR. SHAW: At this time the defendant would request the Court to declare a mistrial in this case for the last remark of counsel which is a reflection indirectly that the defendant failed to testify in this case.

"MR. ANDERSON: What is that—

"THE COURT: The objection is overruled."

▇ This court has defined the scope of review where improper argument is charged as error saying, "Whether or not a particular improper argument is so prejudicial under the facts in the particular case, as to necessitate a reprimand of counsel or a discharge of the jury, is largely within the discretion of the trial

court. An appellate court will not interfere unless the record shows that the trial court abused its discretion to the prejudice of the appellant." State v. Tiedt, 360 Mo. 594, 229 S.W.2d 582, 588[11].

▮ The characterization of the evidence as having a little smoke in it is supported by the record. There was an attempt by defense counsel to get the officers to testify on cross-examination that defendant stated he had found the jewelry. Although the victims' testimony was that the front window had been broken, there was testimony from the officers that defendant stated he entered by a back door. By his cross-examination of the officer defense counsel attempted to show a break in the chain of custody of the jewelry. In Hyde v. State, 196 Ga. 475, 26 S.E.2d 744, 753, the court said: " ' * * * figurative speech has always been regarded as a legitimate weapon in forensic warfare, if there be evidence before the jury on which it may be founded.' " In this case the phrase "a little smoke" is well founded and is apt and fair description within the meaning of the test in State v. Tiedt, supra, and the trial court did not abuse its discretion in overruling appellant's objection to this comment.

▮ Appellant's further complaint by assignment 8 is that the argument contained a reference to defendant's failure to testify. Such reference is prohibited by Supreme Court Rule 26.08, V.A.M.R. This court in State v. Hayzlett, Mo., 265 S.W.2d 321, 323[3, 4], suggested a guide for determining whether Rule 26.08 has been violated, saying, "The key words of the statute, as the state points out, are 'accused' and 'testify,' and the ultimate test of whether the prohibition has been violated is whether the jury's attention was called to the fact that the accused did not testify." In the Hayzlett and subsequent cases, this court has uniformly held that statements to the effect that the state's evidence stands uncontradicted do not violate the rule. In order to work prejudice it must be demonstrated that the attention of the jury was directed to the fact that the *accused* did not testify. State v. Murray, Mo., 280 S.W.2d 809, 811[3–5]. We have examined the complained-of statement in light of the evidence heretofore set out in some detail and are unable to say that this argument is anything other than fair comment in this case. We hold that the trial court did not abuse its discretion in refusing to declare a mistrial.

▮ Appellant complains by assignment 9 that the court erred in admitting testimony by way of a conclusion of Officer Dawes that defendant fit the description of the subject described in a police broadcast. We have held that opinion evidence as to identity of persons, "based upon the observation of the witness, and coupled with a description of the person sought to be identified and the circumstances, is competent, and its probative value is for the determination of the jury." State v. Blackmore, 327 Mo. 708, 38 S.W.2d 32, 34[1, 2]. In this case Officer Dawes had ample opportunity to observe defendant and he testified as to his description when he observed him. Such testimony was properly admitted and the trial court committed no error in this connection.

Appellant complains by assignments 10, 11, and 12 that the trial court erred in admitting testimony referring to flourishing and hiding a shotgun and in admitting testimony about cases pending concerning the shotgun, for the reason that such constituted evidence of other crimes.

▮ Assignment 11 complains that Officer Dawes testified that defendant told the police, " * * * he had taken a shotgun and hidden it under a porch." This assignment is contrary to the record. Dawes' testimony was that defendant said " * * * that he could take us and show us where he hid the gun, * * *." It does not appear that Dawes ever testified that defendant said he had taken a shotgun. Since this evidence tends to show that defendant only hid a gun it could not constitute a criminal offense and assignment 11

is thus without merit. By assignments 10 and 12 appellant contends that the testimony received on flourishing a gun was error because such constituted evidence of a separate offense. The rule excluding evidence of offenses other than the one charged applies only where such evidence is not otherwise relevant and material to the issues of the case. This court has held on innumerable occasions that evidence of other offenses is properly admitted where relevant and material to the issues of the case. 9 Missouri Digest, Criminal Law, ⚷369. Evidence of other offenses is properly admitted when it tends to show identity of the persons charged, State v. Taylor, Mo., 324 S.W.2d 643, 646[4], 76 A.L.R.2d 671, and where such evidence tends to rebut a defense asserted by defendant. State v. Dees, Mo., 276 S.W.2d 201, 207[15, 16]. Here it appears that the defense strategy was to create doubt as to the acts of the police officers. The record shows that defendant's cross-examination of the officers adduced testimony to the effect that at the time of arrest they did not know of any burglary, and that although looking for a man with a shotgun, the officers first saw defendant without a gun. The evidence thereafter adduced by the state to the effect that the officers were seeking a man with, or who had been flourishing, a shotgun, and the admission that defendant had a shotgun and hid it became relevant and material both as to identity of the defendant and to rebut such attempted defense. Under such circumstances the evidence relating to the shotgun was properly admitted even though it may have tended to show other criminal conduct. It appears also that the first mention of the shotgun was in defendant's cross-examination of Officer McBride. Under these circumstances we do not believe the trial court erred in admission of this evidence.

■■■ Assignments 13 and 14 appertain to the court's instructions. In 13 appellant complains that instructions 1 through 5 were "vague, erroneous, ambiguous, confusing, misleading and did not state correctly the law applicable to this case, and were not supported by the evidence." By assignment 14 appellant complains that the court erred in not properly instructing on the law applicable to the instant case. The transcript shows that defendant made no objection to instructions 4 and 5 on the subjects of argument and unanimous verdict respectively. In addition, these assignments preserve nothing for review under Supreme Court Rule 27.20, V.A.M.R. An assignment that the instructions were ambiguous, misleading and confusing and did not state the law properly is too general to preserve anything for appellate review. State v. Pinkerman, Mo., 349 S.W.2d 951, 952[2]. Likewise, the assignment that the court erred in not properly instructing in all law applicable to the instant case preserved nothing for appellate review. State v. White, Mo., 301 S.W.2d 827, 829[8, 9]; State v. Johnson, Mo., 286 S.W.2d 787, 791[2]. These charges of error are held without merit.

We have examined the transcript pursuant to Supreme Court Rule 27.20(c), V.A.M.R., and we find no plain error affecting substantial rights. We have also examined those matters in the record for which no assignment of error is required. Supreme Court Rule 28.02, V.A.M.R. The information is sufficient. Defendant was arraigned and pleaded not guilty. The verdict is in proper form and is responsive to the issues, and the punishment fixed by the trial judge is within limits prescribed by law. Appellant and his counsel were present throughout the trial. Allocution was granted and the judgment is responsive to the issues and the verdict.

The judgment is affirmed.

HOUSER and WELBORN, CC., concur.


PER CURIAM.

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All concur.